## McAnaney v. McAnaney

*Joni Berner,* for plaintiff/appellant.
*James M. McAnaney,* pro se, defendant/appellee.

LEVIN, *J.,* September 4, 1996—This appeal arises out of a support order entered by this court on January 4, 1996. The parties are the parents of two children:

Nicole (born July 9, 1981) and Tristan (born August 14, 1986). The parties are separated but not divorced.

On January 4, 1995, appellant/Mother filed a petition to increase support for herself and the children in the form of health care coverage. Appellee/Father was already obligated to provide health care coverage for the children by virtue of a prior support order. Father was providing coverage with Keystone Health Plan East through his employment with the City of Philadelphia. Mother argued that she and the children had relocated to New Jersey, and that no health care providers in New Jersey accepted Keystone. Mother requested that Husband be required to elect coverage with U.S. Healthcare, which was available through his employment, and which would be accepted by New Jersey providers in addition to Father's own regular doctor.

After a hearing, the master in support recommended that Father be ordered to elect U.S. Healthcare for himself, Mother and the children, and that the parties share the unreimbursed costs of therapy with Dr. John Colyar for the child Tristan, with Father paying 60 percent and Mother 40 percent. Father filed exceptions which were argued before this court on December 8, 1995.

Prior to the exceptions being heard, Mother filed a petition for special relief on May 24, 1995. In her petition, Mother alleged that Father's employer was in the midst of "open enrollment" for employees to elect health care coverage, and that this enrollment period would close at the end of May 1995. Mother stated that Father had indicated to her that he planned to change from Keystone to Personal Choice health care coverage, which would be accepted by providers in both Pennsylvania and New Jersey. In her petition, Mother argued that Dr. Colyar, Tristan's therapist, did not accept Personal Choice, and asked the court to order Father to

either elect U.S. Healthcare or pay for the uncovered cost of Tristan's therapy with Dr. Colyar. On May 30, 1995, the Honorable Nicholas Kozay Jr., granted Mother's petition and ordered Father to elect U.S. Healthcare or suffer a fine.

Father's exceptions to the master's recommendation were heard by this court December 8, 1995. After hearing oral argument from counsel for Mother and from Father, pro se, the court took the matter under advisement. On January 4, 1996, the court granted Father's exceptions. The court held that it did not have the authority to order a particular form of health care coverage, as long as Father fulfilled his obligation of providing Mother and the children with adequate coverage. The court ordered that Father provide coverage for Mother and the children and that he pay 60 percent of the reasonable unreimbursed medical expenses. However, the order provided that Father was permitted to elect the health care coverage of his choice, so long as Mother and the children were provided with adequate coverage. Furthermore, the order stated that if Mother chose to use a doctor not permitted by Father's coverage, Mother would bear the cost of this choice. Mother filed this appeal on February 2, 1996.

On appeal, Mother argues that the court erred in the following: (1) in finding that it did not have the authority to order Father to elect particular health care coverage where the requested coverage cost the same as that preferred by Father, where it also included Father's doctor, where Mother had "valid medical reasons" for the coverage she requested, where the requested coverage would include the child's treatment with his present therapist; (2) in holding that Father had met his obligation to provide adequate and reasonable health care coverage, where such coverage would not allow

for Tristan's continued treatment with his present therapist and where the master had found that such treatment was in the child's best interest; and (3) in holding that Mother's choice to use a therapist not covered by Father's insurance would not be a "reasonably necessary unreimbursed medical expense" for which Father would be responsible to contribute.

Father testified before the master below that he would not agree to share the expenses of Tristan's therapy with Dr. Colyar because he did not believe Tristan needed therapy or that he suffered from A.D.D. (N.T. 4/10/95 at 8-9.)[1] He also testified that therapy for Tristan would be free if it were obtained through his union. Mother testified that she began taking Tristan to see Dr. Colyar in February 1995, and that he had seen Dr. Colyar four times as of the master's hearing. Both parties indicated that Tristan had been seen by other doctors prior to beginning with Dr. Colyar. Mother testified that the children had been seeing Dr. Colyar in 1992, 1993 and for a period in 1994.

Father filed exceptions and argued to this court that, in fact, Dr. Colyar had not been treating Tristan for over a year prior to February 1995 when Mother began taking him for treatment. Father indicated that he wanted to change to Personal Choice because he felt it was better than U.S. Healthcare and because it would cover doctors in both Pennsylvania and New Jersey: if necessary, he would have the benefit of being able to take

---

1. Father did agree at the master's hearing that he would apply for coverage under U.S. Healthcare, as Mother requested. However, at the exceptions argument before this court, Father argued that he wanted the opportunity to choose different insurance. Father indicated that a change in his union contract since the time of the master's hearing had resulted in the availability of different insurance companies which would provide coverage in New Jersey.

the children to a doctor in Pennsylvania during his periods of partial custody. Father also believed that Tristan should not be treated by Dr. Colyar.

The issue of health care coverage and expenses in the area of child or spousal support is addressed by statute and rule. The applicable statute provides, with regard to the responsibility of noncustodial parents:

"If health care coverage is available at a reasonable cost to a noncustodial parent on an employment-related or other group basis, the court shall require that the noncustodial parent provide such coverage to the children of the parties." 23 Pa.C.S. §4326(b).

The statute also provides that the court "may require" parents to pay a certain percentage of "the reasonable and necessary uncovered health care expenses" of their children. 23 Pa.C.S. §4326(e). The statute's definition of "health care coverage" is not very helpful in this case, as it only defines the term as "Coverage for medical, dental, orthodontic, optical, psychological, psychiatric, or other health care services for a child." 23 Pa.C.S. §4326(l). The rule governing the operation of the support guidelines provides the following with regard to the inclusion of unreimbursed medical expenses in a support order:

"Unreimbursed medical expenses will be divided between the parties in proportion to their respective net incomes. An annual limitation may be imposed when, in the opinion of the trier of fact, the burden on the obligor would otherwise be excessive. . . . [M]edical expenses

"(1) include all expenses incurred for reasonably necessary medical services and supplies including, but not limited to, surgical, dental, chiropractic and optical services;

"(2) do not include cosmetic, psychiatric or psychological services, or orthodontia unless specifically directed in the order of support." Pa.R.C.P. 1910.16-5(p).

Neither of the provisions quoted above answers the questions posed by this case. Nor was the court able to locate a case that would provide guidance on these issues.

After careful review of the statute and the rule, the court found nothing therein permitting it to order Father to carry a particular type of health care coverage. Father cited legitimate objections to carrying the brand of coverage Mother requests. If Father's objections were frivolous or if the coverage preferred was patently inadequate, then the court would have been presented with a different issue. However, that was not the case here. The court does not believe it has the authority to ignore Father's sincere reasons for choosing his own coverage for Mother's convenience.

Mother argues that the coverage Father has chosen will be inadequate because it does not cover Dr. Colyar. She points to the master's finding that it was in Tristan's best interests[2] to continue treatment with Dr. Colyar. The court found that Father's objections on this issue were also legitimate. The court reviewed the testimony before the master and the arguments of Father during oral argument and determined that the fact that Father's preferred coverage did not cover Dr. Colyar did not

2. It is interesting that the master discussed Tristan's "best interests," language typically used in the area of child custody. The court is not confident that the master had sufficient evidence before him to make findings as to the child's best interests—even assuming that a master in support has the authority to make such a finding. The court would usually expect the master to inquire into whether a given expense was a reasonable one under the circumstances of a given case.

render the coverage inadequate. Father testified plausibly that Dr. Colyar's involvement was not necessary. Father also testified that his union provided coverage for therapy that would be free. Under these circumstances, the court also properly held that Father should not be required to contribute toward the expense of Tristan's treatment if Mother chose to continue to send Tristan to a doctor not covered by Father's insurance.